UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ZACHARY PUCKETT, MARIAH MASON, and B.P., *a minor*, <br><br>    Plaintiffs, <br><br>    vs. <br><br> UNITED STATES OF AMERICA, <br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) )   No. 1:20-cv-01850-JMS-MPB |

## ORDER

Plaintiffs Zachary Puckett and Mariah Mason (the "Parents") and their minor son, B.P., filed this negligence action against Defendant United States of America (the "Government") after B.P. was stuck with a used hypodermic needle while visiting a health facility operated by the Government. The Government has filed a Partial Motion to Dismiss, [Filing No. 12], which is now ripe for the Court's decision.

### I.
### STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

1

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz,* 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations contained in the Complaint,[1] which, consistent with the standard of review articulated above, the Court must accept as true for purposes of deciding the Partial Motion to Dismiss.

On July 17, 2018, Mr. Puckett, Ms. Mason, and B.P. were at the HealthNet Southwest Health Center in Indianapolis, a facility operated by the Government, in relation to treatment that B.P. was receiving for an infection. [Filing No. 7 at 1; Filing No. 7-1 at 2.] While B.P., who was then three years old, was in an exam room waiting to be seen, he stuck himself in the thumb with a used hypodermic needle that was on the floor of the exam room. [Filing No. 7 at 2; Filing No. 7-1 at 2.] The Parents witnessed the incident. [Filing No. 7-1 at 2.] B.P. then underwent "serial testing" for potential exposure to diseases that he may have been exposed to from the needle stick,

---

[1] The Complaint, [Filing No. 1], was sealed by the Court because it contains sensitive information about a minor. [Filing No. 4.] Plaintiffs subsequently filed a redacted Complaint, [Filing No. 7], for the public docket. Because the parties cite to the redacted Complaint in their briefing on the motion, this Court will also cite to the redacted Complaint.

including HIV and hepatitis. [Filing No. 7 at 2.] Plaintiffs allege that the needle stick and subsequent testing caused the Parents anxiety. [Filing No. 7-1 at 2.]

After the Government denied Plaintiffs' claim under the administrative process set forth in the Federal Tort Claims Act, Plaintiffs filed this lawsuit. [Filing No. 7 at 2.] Plaintiffs assert a claim of negligence against the Government for the needle stick to B.P. [Filing No. 7 at 2.] Plaintiffs also assert a negligent inflection of emotional distress ("NIED") claim, asserting that "[a]s a result of the injuries to [B.P.]," the Parents "have suffered anxiety and emotional distress associated with witnessing the dirty needle stick to their son and realizing that he had potentially been exposed to deadly diseases such as HIV and Hepatitis." [Filing No. 7 at 2.]

The Government filed a Partial Motion to Dismiss, seeking to dismiss the Parents' NIED claim, arguing that the Parents have failed to allege facts sufficient to state a claim under the law. [Filing No. 12.]

## III.
### DISCUSSION

The Government argues that the Court should dismiss the Parents' NIED claim because the Complaint does not allege that either of them sustained any direct physical impact in connection with B.P.'s needle stick injury, which is required to proceed with an NIED claim under Indiana's modified-impact rule. [Filing No. 13 at 5.] The Government next argues that the Parents have not pled a claim under the second theory of NIED liability available under Indiana law—the bystander rule. [Filing No. 13 at 6-7.] According to the Government, B.P.'s needle stick injury as described in the Complaint is not, as a matter of law, a sufficiently serious injury to support an NIED bystander claim. [Filing No. 13 at 6-7.] It further argues that the Parents' "realization" that "B.P. had potentially been exposed to deadly diseases does not increase the severity of B.P.'s otherwise minor injury." [Filing No. 13 at 7 (citing Filing No. 7-1 at 2) (alternations omitted).] Finally, the

3

Government argues that even if the Parents could establish physical impact or that B.P. suffered a serious injury, the Complaint does not sufficiently allege that the Parents suffered emotional trauma by only alleging that they "suffered anxiety and emotional distress." [Filing No. 13 at 7-8 (quoting Filing No. 7 at 2).]

In response, the Parents state that they are not advancing their NIED claim under the modified-impact rule, but rather the bystander rule. [Filing No. 18 at 4.] The Parents argue that B.P.'s injury was sufficiently serious and cite *Dollar Inn v. Slone*, 695 N.E.2d 185 (Ind. Ct. App. 1998), a modified-impact-rule case where an Indiana Appellate Court found that a hotel guest who stabbed herself in the thumb with a hypodermic needle hidden in a roll of toilet paper could recover emotional distress damages arising from the guest's fear of contracting AIDS from the needle stick. [Filing No. 18 at 5.] The Parents say that *Dollar Inn* establishes that a needle stick can be a sufficiently serious injury to support an NIED claim, and furthermore, the question of whether an injury is sufficiently "serious" is a question for the factfinder. [Filing No. 18 at 5-6.] Finally, the Parents contend that they have sufficiently alleged the emotional distress that they have suffered to satisfy pleading requirements. [Filing No. 18 at 7-8.] They note that their emotional distress "extended over 6 months" while B.P. continued testing to ensure that he had not contracted any diseases. [Filing No. 18 at 7.]

The Government replies that the Parents' fears that B.P. may have contracted a serious disease, like HIV, from the needle stick are insufficient to state an NIED claim under the bystander rule because such fears are too speculative, and "[o]therwise, any parent who witnesses their child suffer a 'potentially,' but not truly, serious injury would have a NIED claim." [Filing No. 20 at 1.] It argues that *Dollar Inn* has no application here because it was a modified-impact-rule case, not a bystander-rule case. [Filing No. 20 at 2-3.] The Government also replies that under the bystander

rule, the Parents had to witness the "death or serious injury or the gruesome aftermath of such event," and B.P.'s needle stick does not fit within these parameters. [Filing No. 20 at 4.] The Government contends that Indiana courts have rejected NIED claims based only on fears of potential injuries, and these cases preclude the Parents' NIED claim from proceeding here. [Filing No. 20 at 5.] The Government next argues that determining the seriousness of B.P.'s injury is not inherently a jury question, but rather the Court can decide whether the facts, as pled by Plaintiffs, plead a sufficiently serious injury to sustain an NIED bystander claim under the law. [Filing No. 20 at 6.] Finally, the Government reiterates that the Parents have not alleged sufficiently serious emotional distress to maintain their claim. [Filing No. 20 at 6-7.]

In considering a question of state law, federal courts must apply state law as declared by the state supreme court, or in the absence of a statement by that court, by its intermediate appellate courts. *Trytko v. Hubbell, Inc.,* 28 F.3d 715, 719-20 (7th Cir. 1994). Indiana law provides relief for NIED claims under two theories: the modified-impact rule and the bystander rule. *See Clifton v. McCammack*, 43 N.E.3d 213, 214 (Ind. 2015).

Under the modified-impact rule, a plaintiff must allege that he or she was "present at the scene of the injury-producing event" from which he or she "was directly impacted in a physical manner." *Perkins v. Stesiak,* 968 N.E.2d 319, 322 (Ind. Ct. App. 2012). The bystander rule, on the other hand, allows a plaintiff to recover if he or she "actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise [tortious] conduct." *Groves v. Taylor,* 729 N.E.2d 569, 573 (Ind. 2000). Thus, under the bystander rule, a plaintiff can recover emotional distress damages even if the plaintiff "has

suffered no physical injury or impact as a result of the defendant's negligence." *Smith v. Toney*, 862 N.E.2d 656, 657 (Ind. 2007).

In *Groves*, the Indiana Supreme Court adopted the bystander rule and identified three factors that an NIED plaintiff proceeding under a bystander theory must satisfy. First, a "fatal injury or a physical injury that a reasonable person would view as serious" must have occurred to the victim; "[l]ess serious physical harm to a victim would not ordinarily result in severe emotional distress to a reasonable bystander." *Groves*, 729 N.E.2d at 572-73 (quotation marks omitted). Second, the victim must be "analogous to a spouse, parent, child, grandparent, grandchild, or sibling." *Id.* at 573 (quotation marks omitted). Third, the plaintiff must have "witness[ed] either an incident causing death or serious injury [to the victim] or the gruesome aftermath … minutes after it occurs." *Id.* at 573 (quotation marks omitted). The three factors "present issues of law." *Smith*, 862 N.E.2d at 660.

Here, the parties do not dispute that the Parents' allegations satisfy the second and third factors. That is, because B.P. is their son, the Parents have established the requisite familial relationship, and the Parents witnessed B.P.'s needle stick injury while the family waited in the exam room. Instead, the Motion focuses on the first factor—whether the Complaint alleges that B.P. suffered "a physical injury that a reasonable person would view as serious," or, whether B.P.'s injury is a "[l]ess serious physical harm … [that] would not ordinarily result in severe emotional distress to a reasonable bystander." *Groves,* 729 N.E.2d 572-73.

The Parents cite *Dollar Inn*, a case that predates the Indiana Supreme Court's adoption of the bystander rule, in support of their contention that a needle stick and the resulting fear of possible exposure to diseases constitutes a serious injury. In that case, the plaintiff was stuck by a needle concealed inside a toilet paper roll at defendant's hotel. 695 N.E.2d at 188. The plaintiff

6

proceeded with an NIED claim against the hotel under the modified-impact rule. *Id.* The Indiana Court of Appeals rejected the hotel's argument that the needle stab "was so insignificant that it could not be considered a direct impact," and instead held that "there is no requirement that the injury be severe," and that "the direct impact need not be substantial or permanent in nature." *Id.* at 189. The Parents argue that "there is no rational basis to allow the plaintiff in *Dollar Inn* to pursue her claim and yet preclude B.P.'s parents from doing so." [Filing No. 18 at 6.]

However, the Indiana Supreme Court has set forth a basis for differing treatment by adopting different requirements to maintain a modified-impact claim versus a bystander claim:

> It is correct that a plaintiff, to recover emotional damages under the *bystander rule,* must prove that another person suffered a negligently-inflicted "death or severe injury." …. In contrast, however, the same is not required for emotional distress claims brought under the *modified impact rule,* where we have permitted recovery so long as the plaintiff personally sustained a physical impact, in addition to emotional distress damages.

*Spangler v. Bechtel*, 958 N.E.2d 458, 467 (Ind. 2011) (emphases original). Thus, a bystander-rule claimant must establish that the victim suffered a death or severe injury while a direct-impact claimant need only establish a "direct impact," even if the impact did not result in a severe injury. *See id. See also Smith*, 862 N.E.2d at 659 (noting that "we adopted a 'modified impact rule' that required impact but not necessarily physical injury"). For this reason, *Dollar Inn*, a modified-impact-rule case, does not mean that B.P.'s needle stick is a serious injury of the type contemplated by the bystander rule.

Although the Indiana courts have not specifically defined what constitutes a serious physical injury under the bystander theory, this Court is informed by guidance provided by the Indiana Supreme Court. The *Groves* court made clear that "[l]ess serious physical harm to a victim" will not sustain a bystander claim. *Groves*, 729 N.E.2d at 572-73. The Indiana Supreme Court has clarified that bystander claims "are not meant to compensate every emotional trauma.

7

Rather, they are limited to those that arise from the shock of experiencing the traumatic event." *Smith*, 862 N.E.2d at 663. In *Clifton v. McCammack*, the Supreme Court explained that the bystander rule requirements "strike[] the appropriate balance between allowing authentic claims to proceed while also curbing the real issues of open-ended liability, fraudulent claims, and the ubiquity of this type of injury." 43 N.E.3d. at 220. The Court emphasized that "any further expansion" of the bystander rule "would be too likely to raise the amalgam of policy problems we seek to avoid." *Id.* Thus, the Indiana Supreme Court has made clear that a bystander claim is to be closely circumscribed to three factors identified in *Groves* in an effort to "measur[e] the authenticity of the claim and the limits of liability for emotional harm." *See id.* at 660.

Furthermore, in the criminal context, "serious bodily injury" has been defined by statute as a bodily injury that "creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of a bodily member or organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292. Thus, other areas of Indiana law have defined serious bodily injury as substantial physical harms.

Here, the Court's analysis of B.P.'s injury is limited to his "physical injury," *i.e.*, the harm suffered by B.P.'s body by the needle stick. B.P. was stuck in the thumb by a hypodermic needle. [Filing No. 7 at 2.] B.P. went home with his parents and returned for subsequent testing to confirm that he did not acquire a disease from the needle stick. [*See* Filing No. 7-1 at 8-9.] The allegations in the Complaint of B.P.'s needle stick injury do not allege a serious physical injury to sustain an NIED bystander claim under the law. This finding does not mean that B.P.'s needlestick was not a serious event; it was, and any parent would be rightfully upset and worried. However, Indiana law reserves NIED bystander claims for incidents involving death or serious bodily injury, neither of which is described by the allegations in the Complaint.

Therefore, the Court **GRANTS** the Government's Partial Motion to Dismiss, [Filing No. 12], as to the Parents' NIED claim because Plaintiffs have failed to state a claim upon which relief can be granted.

## IV.
### CONCLUSION

Based on the foregoing, Defendant's Partial Motion to Dismiss, [12], is **GRANTED**. The Parents' NIED claim is **DISMISSED**. Plaintiffs' negligence claim will proceed.

Date: 3/9/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

9